**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JEFFREY MICHAEL MANSBERRY,

       Petitioner,                   Civil No. 2:12-CV-14112
                                      HONORABLE GERALD E. ROSEN
v.                                  CHIEF UNITED STATES DISTRICT JUDGE

KEN ROMANOWSKI,

       Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO
APPEAL IN FORMA PAUPERIS**

       Jeffrey Michael Mansberry, ("Petitioner"), presently confined at the Marquette Branch Prison in Marquette, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.   In his *pro se* application, petitioner challenges his convictions for breaking and entering a building, M.C.L.A. 750.110; and being a third felony habitual offender, M.C.L. A. 769.11.   For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## I.  Background

       Petitioner was charged with breaking and entering a building and being a fourth felony habitual offender, after being arrested for breaking into a lumber company in Helena Township, Michigan on October 21, 2010.

       On January 28, 2011, petitioner pleaded guilty as charged to breaking and entering a building and being a fourth felony habitual offender in the Antrim County Circuit Court. The prosecutor indicated that the parties had entered into an agreement in which petitioner

1

would speak with the police about additional breaking and entering offenses that petitioner had been involved with. The prosecutor indicated that petitioner wanted to "clear up everything that he had done." The prosecutor was already aware of petitioner's involvement with two other breaking and entering cases. The prosecutor stated that after discussing these two breaking and entering charges with the police, petitioner might plead guilty to those as well. The prosecutor indicated that petitioner would not be charged with any other nonassaultive crimes that petitioner discussed with the police. If petitioner fully disclosed all of his breaking and entering crimes to the police, the prosecutor would reduce the fourth felony habitual offender charge to a third felony habitual offender charge. [1] (Plea Tr., 1/28/2011 pp. 3-5). Prior to accepting petitioner's plea, the trial judge advised petitioner of the maximum penalties for the charges that he was pleading guilty. (*Id.,* p. 8). Petitioner acknowledged that the plea agreement as outlined on the record was an accurate description of the agreement. (*Id.,* p. 9). The parties acknowledged that there were no other inducements made to petitioner that had not been placed on the record. (*Id.,* p. 11).

Petitioner was sentenced on March 14, 2011. At the time of sentencing, the prosecutor indicated that petitioner had not pleaded guilty in a case out of Kalkaska County that he was supposed to plead guilty to as part of the agreement. The prosecutor noted, however, that petitioner had sat down with the police and disclosed his involvement in a

---

[1] Under M.C.L.A. 769.12(1)(a), a fourth felony habitual offender can be sentenced to up to life in prison if his current felony carries a maximum sentence of five or more years in prison. By contrast, Under M.C.L.A. 769.11(1)(a), a third felony habitual offender who is convicted of an offense that carries less than life in prison can be sentenced to up to a maximum sentence that is not more than twice the maximum term of the underlying offense. The underlying offense of breaking and entering a building carries up to ten years in prison. The plea agreement thus reduced petitioner's maximum liability from life to twenty years.

number of crimes.  Based upon his disclosure, the prosecutor agreed to reduce petitioner's fourth felony habitual offender charge to a third felony habitual offender charge. (Tr. 3/14/2011, pp. 3-4).  The parties agreed that the reduction in the habitual offender charge reduced the upper limit on his sentencing guidelines range from one hundred and fourteen months to eighty five months and that his sentencing guidelines range was now twenty nine to eighty five months. (*Id.,* p. 5). [2]  In sentencing petitioner, the judge noted that petitioner had been involved in twenty to twenty five break-ins of businesses in Antrim County. Although noting that the sentencing guidelines range had been reduced due to the reduction in the habitual offender charge, the judge did not believe that the sentencing guidelines adequately took into account that petitioner had been involved in twenty five breaking and entering offenses after he had been released on parole for a prior offense. The judge sentenced petitioner to nine to twenty years in prison. (*Id.,* pp. 11-12).

Petitioner's conviction was affirmed on appeal. *People v. Mansberry,* No. 304390 (Mich.Ct.App. December 28, 2011); *lv. den.* 490 Mich. 972, 806 N.W.2d 321 (2011).

Petitioner seeks a writ of habeas corpus on the following ground:

I. The trial court violated Petitioner's Fourteenth Amendment rights by sentencing him outside his guideline range and scoring O.V. [offense variable] 14 without justifiable reasons and proper findings.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty

---

[2]     Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255, n. 7; 666 N.W. 2d 231 (2003)(citing M.C.L.A. 769.34(2)).  The maximum sentence is not determined by the trial judge but is set by law. See *People v. Claypool,* 470 Mich. 715, 730, n. 14; 684 N.W. 2d 278 (2004)(citing M.C.L.A. 769.8).

3

Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim

4

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

In the present case, the Michigan Court of Appeals denied petitioner's application for leave to appeal in a form order "for lack of merit in the grounds presented."  The Michigan Supreme Court subsequently denied petitioner leave to appeal in a standard form order without any extended discussion.  Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, as would warrant federal habeas relief, does not require that there be an opinion from the state court that explains the state court's reasoning. *Harrington,* 131 S. Ct. at 784.  "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.*  In fact, when a habeas petitioner has presented a federal claim to a state court and that state court has denied relief, " it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85.  That presumption may be overcome only when there is a reason to think that some other explanation for the state court's decision is more likely. *Id.* at 785.  In the present case, the AEDPA deferential standard of review applies to petitioner's case where the Michigan Court of Appeals rejected petitioner's appeal "for lack of merit in the grounds presented" and the Michigan Supreme Court subsequently denied leave to appeal in a standard form order. *See Hardaway v. Robinson*, 655 F.3d 445, 447, 449 n. 1 (6th Cir. 2011)(relying on *Harrington* in stating that § 2254(d) applies when "[t]he Michigan Court of Appeals upheld the district court's ruling in an order stating, 'the delayed application for leave to appeal is denied, for lack of merit in the grounds presented'" and "[t]he Michigan

6

Supreme Court, also in a one-sentence order, declined review").

### III. Discussion

In his sole claim for relief, petitioner claims that the trial court erred in scoring points against him under Offense Variable 14 of the Michigan Sentencing Guidelines range. Petitioner further contends that the trial court erred in departing above the sentencing guidelines range of twenty nine to eighty five months and sentencing him to nine to twenty years in prison.

This Court initially notes that petitioner's sentence of nine to twenty years in prison was within the statutory limit under Michigan law for the crime of breaking and entering and being a third felony habitual offender.  A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).  A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F. 3d 298, 302 (6th Cir. 2000).

It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  Petitioner's claim that the state trial court misapplied the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. See *Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003); See also *Coy v. Renico,* 414 F. Supp. 2d 744, 780 (E.D. Mich. 2006).  "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." See *Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009)(citing *Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005)).  Petitioner's claim that the sentencing guidelines were incorrectly

7

scored fails to state a claim upon which habeas relief can be granted. *Cook v. Stegall,* 56 F. Supp. 2d at 797.   Likewise, petitioner's claim that the state trial court improperly departed above the sentencing guidelines range would not entitle him to habeas relief, because such a departure does not violate any of petitioner's federal due process rights. *See Austin*, 213 F. 3d at 301; *See also Drew v. Tessmer,* 195 F. Supp. 2d 887, 889-90 (E.D. Mich. 2001).   "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004).   Any error by the trial court in calculating his guideline score or in departing above his sentencing guidelines range alone would not merit habeas relief. *Id.*

Moreover, the trial court's alleged failure to articulate substantial and compelling reasons for departing above the sentencing guidelines range, as required by M.C.L.A. 769.34(3), would not entitle petitioner to habeas relief, because the alleged violation of Michigan law is not a basis for habeas relief. See *Jackson v. Hofbauer*, No. 08-cv-14649, 2008 WL 4937956, * 3 (E.D. Mich. November 13, 2008); See also *Koras v. Robinson,* 123 Fed. Appx. 207, 214 (6th Cir. 2005)(state trial judge's alleged failure to articulate the reasons for enhancing habeas petitioner's sentence, in violation of M.C.R. 6.425 and Michigan case law, did not present a basis for federal habeas corpus relief).

Petitioner, however, contends that the trial judge used information that had been excluded from consideration under the terms of the plea agreement to upwardly depart above the sentencing guidelines range.   Petitioner argues that because the prosecutor agreed to forego charging petitioner with any additional breaking and entering offenses that he discussed with the police, the judge was precluded from using these uncharged

8

acts as a basis to depart above the sentencing guidelines range.

Petitioner is not entitled to habeas relief on this claim.  "[I]f the government promises not to prosecute a defendant for certain offenses in exchange for a guilty plea to a different offense, the sentencing court may nevertheless consider the relevant but uncharged conduct so long as the punishment selected is within the statutory range for the offense of conviction." *Allen v. Stovall,* 156 F. Supp. 2d 791, 796 (E.D. Mich. 2001)(quoting *Ables v. Scott*, 73 F.3d 591, 593 (5th Cir. 1996)).

Moreover, petitioner has failed to establish a breach of the plea agreement by the trial judge.  Although the plea agreement indicated that petitioner would not be charged with any breaking and entering offenses that he cleared up with the police, there is nothing on the record from the plea hearing to suggest that the parties agreed that the judge could not use these uncharged offenses in fashioning petitioner's sentence, nor was there an agreement that the judge would stay within the sentencing guidelines range.  An unfulfilled state promise obtained in return for a guilty plea will entitle a habeas petitioner to habeas relief. *See Myers v, Straub,* 159 F. Supp. 2d 621, 627 (E.D. Mich. 2001)(internal citation omitted).  However, a federal court sitting in habeas review should not "lightly find misrepresentation in a plea agreement." *Id.*

In reviewing the plea transcript, the Court finds that the only thing the plea agreement stated on the record was that the prosecutor would not charge petitioner with any other nonassaultive crimes that petitioner cleared up with the police and that the prosecutor would reduce the fourth felony habitual offender charge to a third felony habitual offender charge, if petitioner cooperated with the police.  At the time of the plea, petitioner acknowledged that this was the full plea agreement.   Absent extraordinary

9

2:12-cv-14112-GER-RSW   Doc # 9   Filed 06/27/13   Pg 10 of 12   Pg ID 159

circumstances, or some other explanation as to why a defendant did not reveal other terms when specifically asked to do so by the trial court, a plea agreement consists of the terms revealed in open court, where the trial court scrupulously follows the required procedure for taking the defendant's plea. *Baker v. United States*, 781 F. 2d 85, 90 (6ᵗʰ Cir. 1986); *Hastings v. Yukins,* 194 F. Supp. 2d 659, 669 (E.D. Mich. 2002). Because a plea bargain is contractual in nature, it would violate established contract-law standards to permit a defendant to attempt to prove that a plea agreement is otherwise than it unambiguously appears on a thorough record. *Baker,* 781 F. 2d at 90. Plea agreements are to be strictly construed. *See United States v. Brummett,* 786 F. 2d 720, 723 (6ᵗʰ Cir. 1986). A term of a plea agreement "that is unambiguous on its face and agreed to by the defendant in open court will be enforced." *McAdoo v. Elo,* 365 F. 3d 487, 497 (6ᵗʰ Cir. 2004).

In the present case, the only agreement made by the prosecutor at the time of the guilty plea was that petitioner would not be charged with additional nonassaultive crimes and that the fourth felony habitual offender charge would be reduced to a third felony habitual offender charge if petitioner cooperated with the police. [3] A "clear reading" of the plea agreement shows that there was no promise by the prosecutor or the trial judge that the trial judge would not consider petitioner's uncharged conduct in fashioning a sentence or that the judge would stay within the sentencing guidelines range. Petitioner has

---

[3] The initial agreement actually called for petitioner to plead guilty to two additional breaking and entering charges that the prosecutor was aware of before the prosecutor would reduce the fourth felony habitual offender charge to a third felony habitual offender charge. At the time of sentencing, petitioner had not pleaded guilty to these two additional charges. However, because of petitioner's substantial disclosure of his involvement in other offenses, the prosecutor agreed to fulfill his promise to reduce the fourth felony habitual offender charge to a third felony habitual offender charge.

therefore failed to show that the original terms of the plea agreement were breached by the judge. *Myers,* 159 F. Supp. 2d at 628. Because it is clear from the record that no promises were made that have not been kept, or that the plea bargain was breached, petitioner would not be entitled to habeas corpus relief. *See Williams v. Anderson,* 498 F. Supp. 151, 152 (E.D. Mich. 1980). Petitioner is thus not entitled to habeas relief on his claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis*,

11

because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d at 798.

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas

corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is **DENIED**.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  June 27, 2013

I hereby certify that a copy of the foregoing document was served upon the parties
and/or counsel of record on June 27, 2013, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135

12